UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CHRISTOPHER JOHNSON,

                Plaintiff,

   -v-

CORRECTION OFFICER BRUCE TUCKER;
CORRECTION OFFICER CHRISTOPHER KINNE;
CORRECTION OFFICER WILLIAM ELBERT;
NURSE CAROL CHIOCCHI, in their official and
individual capacities,

                Defendants.

No. 17-CV-2739 (KMK)

OPINION & ORDER

Appearances:

Christopher Johnson
Alden, NY
*Pro Se Plaintiff*

Jennifer R. Gashi, Esq.
New York State Office of the Attorney General
White Plains, NY
*Counsel for Defendants*

KENNETH M. KARAS, District Judge:

       Plaintiff Christopher Johnson ("Plaintiff"), an incarcerated inmate proceeding pro se, brings this Action against Correction Officer Bruce Tucker ("Tucker"), Correction Officer Christopher Kinne ("Kinne"), Correction Officer William Elbert ("Elbert"), and Nurse Carol Chiocchi ("Chiocchi") (collectively "Defendants"), pursuant to 42 U.S.C. § 1983. (*See* Compl. (Dkt. No. 2).) Plaintiff alleges violations of his Eighth and Fourteenth Amendment rights in connection with an alleged assault that took place at Sullivan Correctional Facility on April 29, 2014 and the medical care he received thereafter. (*See generally id.*) Before the Court is

Defendants' Partial Motion To Dismiss Plaintiff's claims against Chiocchi for failure to state a claim. (*See* Not. of Mot. To Dismiss (Dkt. No. 21).) For the reasons explained herein, the Motion is granted.

I. Background

A. Factual Background

The following facts are taken from Plaintiff's Complaint and, for purposes of this Motion, are assumed true.

From 2013 to 2016, Plaintiff was incarcerated at Sullivan Correctional Facility ("Sullivan"), and each of the Defendants—including Chiocchi—was employed at Sullivan during this time period. (*See id*. at 1–2.)[1] In or about April 2013, Tucker told Plaintiff "Blood in[], so Blood out," which Plaintiff perceived as a threat that Tucker would harm Plaintiff due to Tucker's belief that Plaintiff was a member of the Bloods gang. (*Id.* at 4.) Plaintiff filed a grievance for this, as well as Tucker's spilling of a cup of juice on Plaintiff during the same month. (*See id.*)

Roughly one year later, on April 29, 2014, Tucker went to Plaintiff's cell and told him to get dressed. (*See id.*) Tucker returned to Plaintiff's cell a few minutes later and stated, "Ass[]hole, when your cell is open, turn right and place your hands high against the wall, and if you do anything stupid, I'm going to bounce your head off the wall like a basketball." (*Id.* (internal quotation marks omitted).) Plaintiff complied with this order, and Tucker proceeded to search Plaintiff by "groping [him] by his underwear." (*Id.*) Plaintiff complained to Tucker to no avail and, once the search was complete, Tucker pushed Plaintiff in the back of the head and told

---

[1] For ease of reference given Plaintiff's inconsistent use of paragraph numbers in his Complaint, the Court cites to the page numbers at the bottom of each page of Plaintiff's Complaint.

him to go.  (*See id.*)  As Plaintiff and Tucker walked to "the Draft area," Tucker "punch[ed] [Plaintiff] in the back of his head, and . . . knock[ed] him on the floor."  (*Id.* at 5.)  Tucker then began choking Plaintiff on the ground, and was then joined by Kinne and Elbert.  (*See id.*) Kinne and Elbert "repeatedly kicked [P]laintiff in his face," while Tucker continued to choke Plaintiff and Correction Officer Thompson ("Thompson") proceeded to "bend[] . . . Plaintiff's feet unnecessarily to inflict unnecessary pain."  (*Id.*)  Eventually, Sergeant Keith responded and ended the assault for the time being.  (*See id.*)  Plaintiff was then handcuffed by Tucker and Thompson, but was still being "punch[ed] . . . in the back of the head," before being escorted to "the Clinic."  (*Id.*)

On the way to the Clinic, Kinne and Elbert "slammed Plaintiff's face into [a] glass window . . . causing Plaintiff to vomit and lose consciousness."  (*Id.*)  Eventually, Plaintiff was "awaken[ed] by Nurse Chiocchi's voice in the Facility Hospital, and [e]xamined before [being] taken to the outside [h]ospital."  (*Id.*)  Chiocchi examined Plaintiff, but "failed to note . . . Plaintiff's severe head injury and excruciating pain and suffering."  (*Id.* at 6.)  Thus, according to Plaintiff, Chiocchi "stat[ed] the incorrect injuries on the medical report."  (*Id.*)  Plaintiff was then taken by an ambulance to Monticello Hospital, where "he was seen by a [n]urse, who reported his correct injuries."  (*Id.*)

### B.  Procedural History

Plaintiff filed his Complaint on April 14, 2017, (*see generally* Compl.), and Plaintiff's request to proceed in forma pauperis was granted on April 28, 2017, (*see* Order Granting IFP Application (Dkt. No. 6)).  Simultaneously with his Complaint, Plaintiff filed a Motion for Appointment of Counsel, (*see* Dkt. No. 1), which the Court denied without prejudice on May 24, 2017, (*see* Order (Dkt. No. 9)).  Defendants submitted a letter to the Court on October 3, 2017,

3

requesting permission to file a partial Motion To Dismiss on behalf of Defendant Chiocchi. (*See* Letter from Jennifer Gashi, Esq., to Court (Oct. 3, 2017) (Dkt. No. 19).) On October 17, 2017, the Court entered an Order that Defendants could file their partial Motion To Dismiss on behalf of Chiocchi by November 18, 2017, and that Plaintiff should respond to the Motion by December 18, 2017. (*See* Mot. Scheduling Order (Dkt. No. 20).)

On November 16, 2017, Defendants filed their Partial Motion To Dismiss on behalf of Chiocchi. (*See* Dkt. Nos. 21–22.) Tucker, Kinne, and Elbert did not join in the Motion. (*See id.*) Plaintiff did not file any opposition papers. The Court will therefore consider the Motion fully briefed, but independently consider its merits. *See Goldberg v. Danaher,* 599 F.3d 181, 183 (2d Cir. 2010) (explaining that district courts should consider the merits of a motion to dismiss rather than automatically grant the motion if a plaintiff fails to respond).

## II. Discussion

### A. Standard of Review

Defendant Chiocchi moves to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) as to the claims brought against her. (*See* Dkt. Nos. 21–22.) The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and internal quotation marks omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and

internal quotation marks omitted). Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

In considering Defendants' partial Motion To Dismiss, the Court is required to "accept as true all of the factual allegations contained in the [C]omplaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *see also Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (same). And, the Court must "draw[] all reasonable inferences in favor of the plaintiff." *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Moreover, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to

matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks omitted).

Where, as here, a plaintiff proceeds pro se, the Court must "construe[] [his complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (per curiam) (internal quotation marks omitted). However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedure and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (internal quotation marks omitted).

B. Analysis

"The Eighth Amendment forbids 'deliberate indifference to serious medical needs of prisoners.'" *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). A convicted prisoner's claim of deliberate indifference to his medical needs by those overseeing his care is analyzed under the Eighth Amendment because it is an allegation that the "conditions of confinement were a form of punishment" and thus is a "violation of [the] Eighth Amendment right to be free from cruel and unusual punishments." *Darnell v. Pineiro*, 849 F.3d 17, 35 (2d Cir. 2017). Here, too, the inquiry proceeds by two steps. "First, the plaintiff must establish that he suffered a sufficiently serious constitutional deprivation. Second, the plaintiff must demonstrate that the defendant acted with deliberate indifference." *Feliciano v. Anderson*, No. 15-CV-4106, 2017 WL 1189747, at *8 (S.D.N.Y. Mar. 30, 2017).

"The first requirement is objective: the alleged deprivation of adequate medical care must be sufficiently serious." *Spavone*, 719 F.3d at 138 (internal quotation marks omitted). Analyzing this objective requirement involves two inquiries: "[t]he first inquiry is whether the

6

prisoner was actually deprived of adequate medical care," *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006), and the second "asks whether the inadequacy in medical care is sufficiently serious. This inquiry requires the [C]ourt to examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner," *id.* at 280. To meet the objective requirement, "the inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health." *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013). "There is no settled, precise metric to guide a court in its estimation of the seriousness of a prisoner's medical condition." *Brock v. Wright*, 315 F.3d 158, 162 (2d Cir. 2003); *see also Smith v. Outlaw*, No. 15-CV-9961, 2017 WL 4417699, at *2 (S.D.N.Y. Sept. 30, 2017) (same). Nevertheless, the Second Circuit has suggested the following non-exhaustive list of factors to consider when evaluating an inmate's medical condition: "(1) whether a reasonable doctor or patient would perceive the medical need in question as 'important and worthy of comment or treatment,' (2) whether the medical condition significantly affects daily activities, and (3) 'the existence of chronic and substantial pain.'" *Brock*, 315 F.3d at 162 (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)).

"The second requirement is subjective: the charged officials must be subjectively reckless in their denial of medical care." *Spavone*, 719 F.3d at 138. Under the second prong, the defendant must "appreciate the risk to which a prisoner was subjected," and have a "subjective awareness of the harmfulness associated with those conditions to be liable for meting out that punishment." *Darnell*, 849 F.3d at 35; *see also Nielsen,* 746 F.3d at 63 ("Deliberate indifference is a mental state equivalent to subjective recklessness. . . . This mental state requires that the charged official act or fail to act while actually aware of a substantial risk that serious inmate harm will result." (internal quotation marks omitted)). In other words, "[i]n medical-treatment

7

cases not arising from emergency situations, the official's state of mind need not reach the level of knowing and purposeful infliction of harm; it suffices if the plaintiff proves that the official acted with deliberate indifference to inmate health." *Nielsen*, 746 F.3d at 63 (internal quotation marks omitted). "[M]ere negligence," however, is not enough to state a claim for deliberate indifference. *Walker*, 717 F.3d at 125 (internal quotation marks omitted); *see also Vail v. City of New York*, 68 F. Supp. 3d 412, 424 (S.D.N.Y. 2014) (same). Relatedly, "mere disagreement over the proper treatment does not create a constitutional claim," and accordingly, "[s]o long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." *Chance*, 143 F.3d at 703.

Ultimately, Plaintiff's allegations are insufficient to state a deliberate indifference claim against Chiocchi. As alleged, Plaintiff's medical needs were not ignored. Chiocchi woke Plaintiff up, asked him if he knew where he was, and examined him—although Plaintiff alleges Chiocchi "failed to note" his injuries. (Compl. 6.) Plaintiff was then taken from Sullivan to Monticello Hospital via ambulance and treated for his injuries. (*See id.*) While Plaintiff may have disagreed with the diagnosis Chiocchi made during her initial examination, "such complaints do not rise to the level of an Eighth Amendment violation." *Candelario v. Quality Choice Corr. Healthcare*, No. 16-CV-2083, 2017 WL 3049553, at *4 (S.D.N.Y. July 18, 2017); *see also Chance*, 143 F.3d at 703 ("It is well-established that mere disagreement over the proper treatment does not create a constitutional claim."); *Washington v. Westchester Cty. Dep't of Corr.*, No. 13-CV-5322, 2014 WL 1778410, at *6 (S.D.N.Y. Apr. 25, 2014) ("[I]t is well-settled that the ultimate decision of whether or not to administer a treatment or medication is a medical judgment that, without more, does not amount to deliberate indifference."); *Harris v. Westchester Cty. Med. Ctr.*, No. 08-CV-1128, 2011 WL 2637429, at *3 (S.D.N.Y. July 6, 2011)

("As for misdiagnosis, without more, allegations of negligent treatment and misdiagnosis do not state a cause of action under the Eighth Amendment." (alteration and internal quotation marks omitted)); *Harris v. Howard*, No. 07-CV-1065, 2009 WL 537550, at *12 (N.D.N.Y. Mar. 3, 2009) (finding claims that a nurse "did not check him for injuries before she went to get the stretcher," and "improperly failed to complete an Unusual Incident Report and an Inmate Injury Report . . . is simply not an Eighth Amendment claim under any view of the facts"); *Sonds v. St. Barnabas Hosp. Corr. Health Servs.*, 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001) ("[D]isagreements over medications, diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for specialists or the timing of their intervention, are not adequate grounds for a [§] 1983 claim. These issues implicate medical judgments and, at worst, negligence amounting to medical malpractice, but not [a violation of] the Eighth Amendment."); *Mitchell v. Keane*, 974 F. Supp. 332, 342 (S.D.N.Y. 1997) ("[The defendant's] failure to fill out an injury report does not state an Eighth Amendment claim. An injury report is not medically necessary for a minimally civilized life."), *aff'd*, 175 F.3d 1008 (2d Cir. 1999). Plaintiff does not allege that Chiocchi refused to see or treat him when he was taken to the clinic; he merely complains that Chiocchi got the diagnosis wrong and failed to note the right diagnosis in her report. Such complaints do not rise to the level of an Eighth Amendment violation.

At best, Plaintiff may have alleged a claim for medical malpractice if Chiocchi indeed misdiagnosed his injuries. Such allegations, however, cannot "support an Eighth Amendment claim unless the malpractice involves culpable recklessness, i.e., an act or a failure to act by the prison doctor that evinces a conscious disregard of a substantial risk of serious harm." *Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003) (internal quotation marks omitted). "In other words, 'the charged official [must] act or fail to act while *actually aware* of a substantial

risk that serious inmate harm will result.'" *Bell*, 980 F. Supp. 2d at 561 (alteration in original) (quoting *Salahuddin*, 467 F.3d at 280). No such circumstances exist here, as Plaintiff does not allege that Chiocchi refused to see, examine, or transfer him to an outside hospital to receive medical care; rather, he only complains that Chiocchi got the diagnosis wrong. That is not a claim for deliberate indifference, and is "at worst, negligence amounting to medical malpractice." *Sonds*, 151 F. Supp. 2d at 312.

Furthermore, Plaintiff's Complaint makes clear that he *was* treated the night of the assault, as he "awaken[ed] by Nurse Chiocchi . . . , and [e]xamined before [being] taken to the outside [h]ospital." (Compl. 5.) To the extent Plaintiff is challenging any delay between the time that he was examined by Chiocchi and treated at Monticello Hospital, it does not appear there was any delay in his treatment that night. Still, such a minimal period of time between the assault and treatment on the same night at Monticello Hospital would be insufficient to state an Eighth Amendment claim. "While a lengthy, unjustifiable delay in providing necessary medical treatment may constitute deliberate indifference, that is not at all what happened here." *Waller v. DuBois*, No. 16-CV-6697, 2018 WL 1605079, at *7 (S.D.N.Y. Mar. 29, 2018) (internal quotation marks omitted). Here, Plaintiff was transferred by Chiocchi to Monticello Hospital after her initial examination. Such a delay, if it could even be deemed a delay at all, is not grounds for a deliberate indifference claim. *See Feliciano*, 2017 WL 1189747, at *11 ("Although a delay in providing necessary medical care may in some cases constitute deliberate indifference, the Second Circuit has reserved such a classification for cases in which, for example, officials deliberately delayed care as a form of punishment; ignored a life-threatening and fast-degenerating condition for three days; or delayed major surgery for over two years." (alterations and internal quotation marks omitted)); *Robinson v. Clark*, No. 15-CV-8434, 2017

WL 775813, at *8 (S.D.N.Y. Feb. 27, 2017) (holding that a delay in surgery from April 2015 to December 2015 is insufficient, without more, to support an Eighth Amendment claim); *Ferguson v. Cai*, No. 11-CV-6181, 2012 WL 2865474, at *4 (S.D.N.Y. July 12, 2012) ("Where temporary delays or interruptions in the provision of medical treatment have been found to satisfy the objective seriousness requirement in [the Second] Circuit, they have involved either a needlessly prolonged period of delay, or a delay which caused extreme pain or exacerbated a serious illness."); *Beaman v. Unger*, 838 F. Supp. 2d 108, 110 (W.D.N.Y. 2011) (holding that delay in treatment of wrist and finger fractures due to "the two nurses and [the doctor] misdiagnos[ing] [the plaintiff's] injuries, and fail[ing] to recognize the severity of those injuries . . . might conceivably show malpractice, but they do not state an Eighth Amendment claim."). The Complaint makes no mention of any purposeful delay; rather, it indicates that Plaintiff was given an initial examination by Chiocchi, and then promptly transferred from Sullivan to an outside medical facility where he received treatment for his injuries. (*See* Compl. 5–6.)

Ultimately, Plaintiff's conclusory and inconsistent allegations that Chiocchi "demonstrated deliberate indifference . . . by her failure to provide him with prompt and proper medical treatment," (*id.*), "have not nudged his claims across the line from conceivable to plausible," *Candelario*, 2017 WL 3049553, at *5; *see also Flemming v. Smith*, No. 11-CV-804, 2014 WL 3698004, at *6 (N.D.N.Y. July 24, 2014) ("Conclusory allegations that medical staff defendants were aware of a [prisoner's] medical needs and failed to provide adequate care are generally insufficient to state an Eighth Amendment claim of inadequate medical care."); *Gumbs v. Dynan*, No. 11-CV-857, 2012 WL 3705009, at *12 (E.D.N.Y. Aug. 26, 2012) (same). Accordingly, Plaintiff's claims against Chiocchi are dismissed.

III. Conclusion

For the reasons stated above, Defendants' partial Motion To Dismiss is granted as to Defendant Chiocchi. This Opinion does not impact Plaintiff's outstanding claims against the remaining Defendants. Moreover, because this is the first adjudication of Plaintiff's claims on the merits, the dismissal is without prejudice. If Plaintiff wishes to file an amended complaint, Plaintiff must do so within 30 days of the date of this Opinion. Plaintiff should include within that amended complaint any changes to correct the deficiencies identified in this Opinion that Plaintiff wishes the Court to consider. Plaintiff is advised that the amended complaint will replace, not supplement, the original complaint. The amended complaint must contain *all* of the claims and factual allegations Plaintiff wishes the Court to consider, including those against Defendants who have not yet filed a Motion To Dismiss. The Court will not consider factual allegations contained in supplemental letters, declarations, or memoranda. If Plaintiff fails to abide by the 30-day deadline, his claims against Chiocchi may be dismissed with prejudice and the Court will proceed with the case against the remaining Defendants.

The Clerk of Court is respectfully directed to terminate the pending Motion, (Dkt. No. 21), and to mail a copy of this Opinion & Order to Plaintiff's address on the docket.

SO ORDERED.

DATED: June 12, 2018
White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE